```
                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF VERMONT


EDWARD A. MUELLER, M.D.,              :
          Plaintiff,                  :
                                      :
          v.                          :    File No. 1:05-CV-38
                                      :
RUTLAND MENTAL HEALTH                 :
SERVICES, INC.                        :
          Defendant.                  :
_____:
```

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO AMEND COMPLAINT
(Papers 35 and 44)

Defendant Rutland Mental Health Services, Inc. moves for summary judgment on Count I, under the Americans with Disabilities Act (ADA), § 2 et seq., 42 U.S.C. § 12101 et seq., and Count III, under the Vermont Fair Employment Practices Act (VFEPA), 21 V.S.A. § 495 et seq., of Plaintiff Edward A. Mueller's complaint alleging Defendant failed to accommodate his heart condition. Paper 35. For the reasons stated below, Defendant's motion is DENIED. Plaintiff's motion to amend his complaint to add punitive damages and a claim for breach of the implied covenant of good faith, Paper 44, is GRANTED in part and DENIED in part.

### Background

Defendant employed Plaintiff, a 56-year-old psychiatrist, from October 1986 until March 2004. Paper 1 ¶ 6. Plaintiff's duties included providing and managing psychiatric care; clinical

1

supervision; emergency diagnosis and treatment of adult outpatients; and evening, weekend, and holiday on-call responsibilities for Defendant and Rutland Regional Medical Center, performed on a rotating schedule with other full- and part-time psychiatrists.  Papers 38 at 2-3, Ex. 1; 39 ¶ 7, Ex. 2.[1]

During his years of employment, Plaintiff suffered a heart attack in 1991, a life-threatening arrhythmia and insertion of a pacemaker in 1993, and medication-induced liver failure and congestive heart failure in 2001.  In October 2003, Plaintiff experienced severe heart failure, after which doctors implanted an upgraded pacemaker.  Plaintiff was out of work from October 2003 until mid-January 2004, utilizing short-time disability and family medical leave, which ran out after 90 days.  Paper 1 ¶¶ 8-14; Paper 44, Ex. 16 (2/9/04 Memo).

On January 15, 2004, Plaintiff's doctors cleared him for part-time work -- specifically, 20 hours per week and no call duty.  Paper 36, Ex. 1 (1/16/04 Letter).  Shortly thereafter, Defendant notified Plaintiff that he must return immediately to work 20 hours per week, with no call duty, and if he did not

---

[1] Defendant argues Plaintiff failed to submit a Statement of Disputed Facts.  Paper 41 at 1, n.1.  The Court construes Plaintiff's Response to Defendant's Statement of Undisputed Facts, Paper 39, as satisfying the requirement in Local Rule 7.1(c)(2).

return to work without restrictions by March 10, 2004, he would be terminated.  Paper 44, Ex. 16 (2/9/04 Memo).

In response, on March 4, 2004, Plaintiff requested the following specific accommodations:

- return to work immediately at 20 hours per week;
- increase to 30 hours after 30 days;
- start with no call and add call as appropriate with his cardiologist's recommendations;
- return to full duty within one year;
- and if unable to perform full duties within one year, Defendant may terminate him.

Paper 36, Ex. 3 (3/4/04 Letter).  Defendant agreed to consider the request.  Paper 1 ¶ 23; Paper 44, Ex. 32 (3/3/04 Memo).  On March 8, 2004, however, Defendant terminated Plaintiff because of allegedly inappropriate comments to staff and patients about Defendant and the requested accommodation.  Papers 44, Ex. 3 (Monson Depo.), Ex. 20 (3/9/06 Termination Letter).

Since August 2004, Plaintiff has engaged in solo practice, serving approximately 30 patients and providing on-call service at all times.  In bringing this suit in February 2005, Plaintiff maintains that, had he been accommodated by Defendant as originally requested, he could have returned to work full-time and been able to perform all his job functions.  Paper 39, Ex. 4 ¶ 7 (Mueller Affidavit).  Defendant's motion for summary judgment argues Plaintiff cannot prove he was a "qualified individual with a disability" within the meaning of the ADA and VFEPA because

Plaintiff was, and remains, unable to perform the essential duties of his job, which include call duty.

I.   Defendant's Motion for Summary Judgment (Paper 35)

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Globecon Group, LLC v. Hartford Ins. Co., 434 F.3d 165, 170 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

The non-moving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).  When ruling on a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party.  Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005).  In an employment discrimination case, the court must be especially cautious in granting summary

4

judgment to the employer "because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." Vergara v. Yonkers Pub. Schs., 386 F. Supp. 2d 377, 382 (S.D.N.Y. 2005) (quoting Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999)).

The standards and burdens of proof under the VFEPA are identical to those under the ADA. Violette v. IBM Corp., 962 F. Supp. 446, 449 (D. Vt. 1996) (quoting Cobb v. Dufresne-Henry, Inc., 603 F. Supp. 1048, 1053 (D. Vt. 1985)). Therefore, Plaintiff's state-law disability-discrimination claim survives or fails on the same basis as his ADA claim.

The ADA and VFEPA protect from discrimination the "qualified individual," defined as a person with a disability who is capable of performing the essential functions of his job with or without reasonable accommodation. See 42 U.S.C. § 12111(8); 21 V.S.A. § 495d(6)(A). Discrimination includes the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Where a disabled plaintiff claims that he can perform a particular job with a reasonable accommodation, his prima facie burden requires showing: (1) the plaintiff is a person with a disability within the meaning of the ADA, (2) an employer covered by the statute had notice of his disability, (3) with reasonable accommodation,

plaintiff could perform the essential functions of the job, and (4) the employer has refused to make such accommodations.  Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004).  The Defendant attacks Plaintiff's ability to prove the third element here.

Demonstrating the ability to perform the essential functions of the job with reasonable accommodation is not a heavy burden. Gilbert v. Frank, 949 F.2d 637, 642 (2d Cir. 1991).  It is sufficient for a plaintiff to present evidence as to his capabilities to perform the job and suggestions for some reasonable modification by the employer.  Id.; accord Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995) (the plaintiff must merely "suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.").  Importantly here, "reasonable accommodation" may include "job restructuring [or] part-time or modified work schedules," but it does not mean elimination of any of the job's essential functions.  42 U.S.C. § 12111(9)(B).

A.   Whether On-Call Duty Is an Essential Function

At the crux of this motion is the parties' dispute regarding whether on-call duty is an essential function of Plaintiff's job. According to EEOC regulations, "essential" functions are fundamental, not marginal, job duties.  29 C.F.R. § 1630.2(n)(1).

6

> A job function may be considered essential for any of several reasons, including but not limited to the following: . . . because of the limited number of employees available among whom the performance of that job function can be distributed; and/or [t]he function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2)(ii-iii).

Courts give considerable deference to an employer's judgment regarding what functions are essential, but ultimately the question of what tasks are essential depends on the totality of the circumstances. Rodal, 369 F.3d at 120 (citing Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997) and 29 C.F.R. § 1630.2(n)(2)). Evidence relevant to the determination includes the employer's judgment, written job descriptions, the amount of time spent performing the function, the consequences of not requiring the plaintiff to perform the function, and work experience of past and current employees in similar jobs. Rodal, 369 F.3d at 120-21 (citing 29 C.F.R. § 1630.2(n)).

Here, several facts favor finding call duty to be one of Plaintiff's essential job functions. First, "evening and weekend on-call responsibilities" are marked as "essential" on Plaintiff's employment contract -- although all 19 duties are so identified. Paper 39, Ex. 2. Second, call duty is performed only by psychiatrists, and a limited number of psychiatrists are available for call duty. Third, in a deposition exchange, Plaintiff was asked, "[Is on-call duty] a necessity in the area?"

7

and he responded "Absolutely."  Paper 36, Ex. 6 at 4.  Plaintiff claims, however, he meant only that call duty is a necessity generally -- not that it is an essential function of his job.  Paper 39 at 3.  Fourth, the rotation schedule shows each psychiatrist would be on-call several nights each month.  Paper 38, Ex. 1.

   Plaintiff argues, however, that other facts weigh against finding call duty to be essential.  Plaintiff first points to the fact that Defendant apparently permitted at least one staff psychiatrist, Dr. Marjorie Carsen, to eliminate call duty when she moved a greater distance from the medical facility.  Paper 38 at 4.  In January 2004, Dr. Carsen and Defendant signed an 11-month contract that reduced her weekly hours from 36 to 30, and eliminated call duty.  Paper 38, Ex. 10.  Dr. Carsen indicated that Defendant's director, Mark Monson, consented to the elimination of call duty (Paper 38, Ex. 11 at 6), which is supported by the contract.  Mr. Monson, however, maintains he agreed to eliminate Dr. Carsen's call duty but told her that, as a result, he would have to replace her because Defendant needed on-call coverage.  Paper 38, Ex. 12 at 2 (Monson Depo.).

   Plaintiff also highlights instances a doctor would take "first call" but another doctor would go in to the hospital if needed.  Paper 38-2 at 9-10.  Plaintiff additionally claims Defendant permitted Dr. Susan Gerretson to modify her call duties to perform mostly weekend call and fewer weeknights, due to child

care issues.  Paper 44 (Pl.'s Motion to Amend) at 10-11, Ex. 27 (Gerretson Depo.).  Finally, Plaintiff claims on-call duty is a small part of the job, and actual emergency room visits while on-call are "rare," Paper 38-1 at 8 -- although Defendant responds the consequences of not performing call duty are great.

Considering the totality of the circumstances, giving deference to the Defendant's business judgment, but viewing the facts in the light most favorable to Plaintiff, it is likely that Plaintiff has presented sufficient evidence regarding this critical material fact for a reasonable juror to conclude call duty was not an essential job function.  Cf. Rodal, 369 F.3d at 121 (holding record did not permit district court to conclude on-call duty constituted essential function of anesthesiologist's job, where employer relieved plaintiff of on-call duty for several months); Hennenfent v. Mid Dakota Clinic, P.C., 1998 WL 1780618, *3 (D.N.D. 1998) (concluding call duty was an essential function of plaintiff's job, where the facts were not in dispute on this issue); see also Whitlow v. Visiting Nurse Ass'n of Western New York, 420 F. Supp. 2d 92, 107-08 (W.D.N.Y. 2005) (noting that whether a job function is essential is to be determined on a case-by-case basis, and is difficult to resolve on summary judgment).

Because Plaintiff has put forth sufficient evidence to create a genuine issue regarding the material fact of whether on-

call duty was an essential function of Plaintiff's job, Defendant's motion for summary judgment is DENIED.

II.  <u>Plaintiff's Motion to Amend Complaint</u> (Paper 44)

Plaintiff seeks to add claims for punitive damages and for breach of the implied covenant of good faith attached to his (at-will) employment contract.  Paper 44.  Plaintiff's original complaint alleges Defendant failed to accommodate him as required by the ADA and VFEPA, and moreover, imposed restrictions on his speech regarding the accommodation and then terminated him in retaliation for not abiding by the restrictions and for seeking an accommodation.  Paper 1 ¶¶ 40, 48, 56-57.  Citing newly discovered evidence, Plaintiff seeks to add the allegation that Defendant "implemented a plan to replace and medically retire Plaintiff" in violation of the implied covenant of good faith, and "fail[ed] to alter this plan" upon learning Plaintiff would return to work from medical leave.  Paper 44 at 3; Paper 47 (Red-Lined Complaint) ¶¶ 68, 83.  Defendant objects on the grounds of delay, duplication, and futility.  Paper 45.  The discovery schedule provided for the parties to complete discovery and file motions by May 15, 2006, Paper 33; Plaintiff filed this motion on May 26.

Fed. R. Civ. P. 15(a) specifies that "leave shall be freely given when justice so requires."  Accordingly, "[i]n the absence of any apparent or declared reason -- such as undue delay, bad

10

faith or dilatory motive, . . . , undue prejudice to the opposing party . . ., etc. -- the leave sought should, as the rules require, be 'freely given.'" Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Delay alone, however, usually does not warrant denial of leave to amend. Id. at 234-35.

As to adding a claim for punitive damages, the Court GRANTS the motion to amend. See Edwards v. Brookhaven Science Assocs., LLC, 390 F. Supp. 2d 225, 234-36 (E.D.N.Y. 2005) (concluding compensatory and punitive damages are available in ADA discrimination and retaliation claims). Plaintiff has presented at least some evidence to support his allegations that Defendant failed to discuss and investigate in good faith possible accommodations, and may otherwise have sought to avoid accommodating his disability.

As to adding a claim for breach of the implied covenant of good faith, other courts have held that because state and federal schemes provide rights of actions to remedy disability discrimination, a plaintiff's claim for breach of implied covenant of good faith based on the same facts must be dismissed. See, e.g., Armstead v. The Stop & Shop Companies, 2003 WL 1343245, *4 (D. Conn. 2003). Two Vermont cases suggest the same result. Lowell v. Int'l Bus. Machs. Corp., 955 F. Supp. 300, 308 (D. Vt. 1997) (dismissing claim for breach of implied covenant where plaintiff's VFEPA discrimination and retaliation claims

based on the same facts did not survive summary judgment); LoPresti v. Rutland Reg'l Health Servs., Inc., 177 Vt. 316, 332, 337 (2004) (dismissing claim for breach of implied covenant where employment contract was at-will and claim duplicated plaintiff's claim for termination in violation of public policy).

Here, as Plaintiff's argument acknowledges, see Paper 52 at 4, his claims for disability discrimination and proposed claim for breach of the implied covenant of good faith are largely based on the same facts -- in sum, that Defendant should have accommodated Plaintiff's disability.  The only new allegation Plaintiff seeks to add is that Defendant "implemented a plan to replace and medically retire Plaintiff" in November 2003 and "fail[ed] to alter this plan" after learning Plaintiff would return to work.  Paper 47 (Red-Lined Complaint) ¶¶ 68, 83. Because Defendant, however, had discretion, limited only by public policy, to terminate Plaintiff's at-will contract, and because Defendant would have been within its rights to terminate for "any reason" upon 120 days' notice, it appears Plaintiff's amendment would be futile.  Therefore, on the grounds of duplication and futility, in addition to delay, the Court DENIES Plaintiff's motion to add a claim for breach of implied covenant of good faith.

## Conclusion

In conclusion, Defendant's motion for summary judgment, Paper 35, is DENIED.  Plaintiff's motion to amend his complaint,

Paper 44, is GRANTED to the extent Plaintiff seeks to add a claim for punitive damages, and DENIED to the extent Plaintiff seeks to add a claim for breach of the implied covenant of good faith.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 17th day of August, 2006.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge