UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| EDWARD A. MUELLER, M.D., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| RUTLAND MENTAL HEALTH | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant | ) |

1:05-cv-38

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiff, by and through his attorneys, Tepper, Dardeck & Levins, LLP, complains of Defendant, Rutland Mental Health Service, Inc., as follows:

### PARTIES

1. Plaintiff is a resident of the United States. His home is in Chittenden, Vermont.

2. Defendant is a Vermont corporation with a principal place of business in Rutland, Vermont.

### JURISDICTION AND VENUE

3. Federal District Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question), as the following claims arise under the laws of the United States: Americans with Disabilities Act of 1990, (ADA), § 2 *et sec* as amended, 42 U.S.C. § 12101 *et sec*, 28 C.F.R. 35.101 *et sec*. The court has pendent jurisdiction over State law claims

pursuant to 28 U.S.C. § 1367, and specifically Vermont's Fair Employment Practices Act (FEPA), 21 V.S.A. § 495(a)(1) *et sec.*

4. The District of Vermont is the proper venue for this action pursuant to 28 U.S.C. § 1391(b) as defendant resides in the state of Vermont.

## BACKGROUND

5. Plaintiff is 57 years of age. He was born on May 23, 1949.

6. Plaintiff was employed by defendant from October 1986 until March 8, 2004.

7. Between April 1991 and October 2004, plaintiff suffered several disabling heart conditions.

8. In April 1991, he suffered a large heart attack. An occlusion of the left anterior descending coronary artery ended blood supply to a large portion of the front and apical walls of the heart resulting in the death of a significant portion of heart muscle in this region. Plaintiff was initially treated at Rutland Regional Hospital and then his care was transferred to Fletcher Allen Hospital in Burlington. After discharge from the hospital and appropriate recuperation, he returned to work.

9. On January 11, 1993, while performing on-call duties at Rutland Regional Medical Center, plaintiff suffered a life threatening cardiac arrhythmia resulting in stoppage of the heart beat and unconsciousness. Plaintiff was resuscitated by medical staff with the assistance of cardio-pulmonary resuscitation (CPR) with defibrillation. Plaintiff's condition was initially treated at Rutland Regional Medical Center. Then he was transferred to Fletcher Allen Medical Facility, and later to Massachusetts General Hospital (MGH). Plaintiff returned to full employment responsibilities after treatment and recuperation.

TEPPER DARDECK & LEVINS, LLP – ATTORNEYS AT LAW                    73 CENTER STREET – RUTLAND, VERMONT 05701-4046

10. In February 1993, an implantable cardiac defibrillator (ICD) system was placed into plaintiff's body at MGH. Plaintiff was briefly out of work during this procedure.

11. In March 1997, plaintiff's ICD was replaced during a brief hospitalization at MGH. Plaintiff missed time from work during this procedure and shortly thereafter returned to full time employment.

12. In May 1997, Plaintiff was admitted to MGH because a lead from the ICD became unattached from the heart wall. The wire was reattached during a brief hospital stay and plaintiff retuned to full job duties.

13. In December 2001 plaintiff developed significant medication induced liver failure and congestive heart failure. He was hospitalized at Rutland Regional Medical Center. After his discharge in January 2002, plaintiff's breathing difficulty improved so that he was comfortable at rest and walking on level ground. Plaintiff again returned to work full time.

14. On October 22, 2003, plaintiff was admitted at the Massachusetts General Hospital due to severe heart failure. The failure of the heart to provide adequate blood supply caused significant fluid retention. Plaintiff's impairments included significant breathing difficulty. Plaintiff was a candidate for heart transplant. His ejection fraction, the amount of blood pumped out of the heart chamber (left ventricle), was extremely low (10-15%). However, plaintiff's condition improved and an alternate treatment option was selected. An upgraded heart monitoring system that synchronized the right and left chambers of the heart (biventricular pacing) was implanted. This procedure was performed at MGH on November 4, 2003.

15. On November 7, 2003, Plaintiff was released from MGH after significant improvement.

16. In a car ride with the local hospital's director of psychiatric services on November 11, 2003, defendant's executive director Mark Monson said that he planned to medically retire plaintiff.

17. In November 2003, defendant began recruiting for a psychiatrist to replace plaintiff.

18. On January 15, 2004 he was cleared to return to work part-time (20 hours per week) as a psychiatrist at Rutland Mental Health Services, Inc.

19. Plaintiff returned to work on January 15, 2004.

20. On that date (January 15, 2004), defendant instructed plaintiff to undergo an independent medical exam by Rutland neurologist Stephen Brittain, M.D. Doctor Brittain prepared a report dated February 2, 2004 in which stated that plaintiff was completely competent and able to function in his role as a psychiatrist.

21. On February 9, 2004, the employer delivered a memorandum to plaintiff which notified him that he would be terminated unless he returned to full time employment by March 10, 2004.

22. Plaintiff notified co-workers that the employer required him to return to work full-time in 30 days or he would be terminated.

23. On February 12, 2004, when the defendant's executive director (Mark Monson) heard that plaintiff had informed staff that he was being fired, plaintiff was placed on administrative leave for what Mr. Monson called "inflammatory, demoralizing and unprofessional" conduct.

TEPPER DARDECK & LEVINS, LLP – ATTORNEYS AT LAW    73 CENTER STREET – RUTLAND, VERMONT 05701-4046

24. Believing that he could perform the essential functions of his job, plaintiff asked defendant to modify his work schedule to accommodate his heart condition. Plaintiff's request was communicated in a meeting held with defendant on February 26, 2004.

25. At that meeting plaintiff requested an accommodation that was consistent with the recommendations of his cardiologist. He sought no on-call duties for one month, with a gradual increase in hours and on-call duties as his condition improved consistent with the approval of his doctors. Plaintiff offered that if he was not able to return to full work and full on-call responsibilities after one year, he would request no further accommodation.

26. Defendant said that the request would place an undue burden upon other physicians, staff and clients. But defendant said they would investigate the request.

27. In the meantime, defendant agreed to allow plaintiff to return from administrative leave provided he say nothing about the request for accommodation. If asked about his status, he was instructed to only say that the reason for the reduction in hours or termination was due to his health. Plaintiff proposed that if asked about his termination, he would say that the employer is considering an accommodation.

28. The employee refused to be limited by the employer's condition, and the employer told him to leave the premises. On March 8, 2004 he received a fax dated March 9, 2004 which stated that he was terminated.

29. Defendant employs more than 400 employees.

30. A right to sue letter issued by the EEOC was received by plaintiff on December 2, 2004.

TEPPER DARDECK & LEVINS, LLP - ATTORNEYS AT LAW         73 CENTER STREET - RUTLAND, VERMONT 05701-4046

## COUNT 1

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

31. Plaintiff repeats the allegations set forth above.

32. Plaintiff is a qualified individual with a disability.

33. Plaintiff's cardiovascular condition significantly limits one or more of plaintiff's major life activities.

34. Breathing, walking, running and eating are a few of the major life activities that are significantly restricted and limited by plaintiff's disabling heart condition.

35. Circulation of the blood, including the major life activities of delivering nutrients and removing impurities from the body are significantly restricted and limited by plaintiff's heart impairment.

36. Plaintiff sought a reasonable accommodation by modification of his work schedule.

37. This accommodation was needed to permit sufficient recuperation, prevent reoccurrence of heart failure and lessen the likelihood or severity of reoccurring heart problems.

38. An accommodation of this kind is specifically recognized in the federal laws. Federal law states that a reasonable accommodation may include part-time or modified work schedules for individuals with disabilities. See, 42 U.S.C. § 12111(9)(B).

39. Defendant could have accommodated plaintiff without an undue burden. The need for temporary coverage of plaintiff's night-time, weekend and holiday on-call responsibility could have been shared by other hospital and Rutland Mental Health psychiatrists without undue burden. A portion of plaintiff's clinical responsibilities could have been temporarily managed by other Rutland Mental Health psychiatrists without undue burden.

40. Defendant had an obligation to accommodate plaintiff.

41. Defendant granted a work schedule modification to another psychiatrist who did not have a disability.

42. On January 28, 2004, defendant signed a contract with another staff psychiatrist, Dr. Marjorie Carson, which allowed her to reduce her weekly hours from 36 to 30 and to completely eliminate on-call responsibilities to accommodate a residence change. That contract became effective February 1, 2004.

43. Several times in the past, plaintiff increased his hours and work load when other staff was in need of accommodation.

44. Defendant engaged in disparate treatment of plaintiff.

45. Defendant failed to accommodate plaintiff as required by the ADA.

46. Defendant's acted maliciously toward plaintiff by recklessly disregarding his rights under the Americans with Disabilities Act.

47. As a result of defendant's illegal actions plaintiff has suffered and will continue to suffer lost income.

48. As a result of defendant's illegal actions, plaintiff has suffered and will continue to suffer significant emotional upset.

49. For defendant's reckless indifference, plaintiff requests exemplary damages.

## COUNT 2

## RETALIATION

50. The allegations set forth above are repeated here.

TEPPER DARDECK & LEVINS, LLP – ATTORNEYS AT LAW            73 CENTER STREET – RUTLAND, VERMONT 05701-4046

51. If asked about his job status, plaintiff wished to inform those with a need to know that his doctors had allowed him to return to work with restrictions, and that he had requested an accommodation for his medical condition so that he could continue to work.

52. The employer refused to allow him to say that. If asked, the employer insisted that he only say that the reason for job modification or termination "It is my health."

53. Saying that he sought an accommodation was the truth. Plaintiff's request for an accommodation under the ADA is a protected right.

54. When he refused to abide the employers demand that he keep quiet about his request for accommodation, he was told he would be fired.

55. Termination was retaliation for stating the truth and exercising his right under the Americans with Disabilities Act.

56. Defendant acted maliciously toward plaintiff by recklessly disregarding his rights as a disabled worker.

57. As a result of defendant's illegal actions plaintiff has suffered and will continue to suffer lost income.

58. As a result of defendant's illegal actions, plaintiff has suffered and will continue to suffer significant emotional upset.

59. Plaintiff requests exemplary damages for defendant's reckless disregard of his rights.

## COUNT 3

### VERMONT'S FAIR EMPLOYMENT PRACTICES ACT

60. The allegations set forth above are repeated here.

TEPPER DARDECK & LEVINS, LLP – ATTORNEYS AT LAW                    73 CENTER STREET – RUTLAND, VERMONT 05701-4046

61. It is illegal under Vermont's Fair Employment Practice's Act to discriminate against qualified persons with disabilities.

62. Plaintiff is a qualified disabled individual capable of performing the essential functions of his job as psychiatrist with reasonable accommodation.

63. Defendant's termination of plaintiff's employment was directly related to his disability, or retaliation for refusing to keep quiet about his request for accommodation.

64. Defendant knew, or should have known, that termination of plaintiff would cause significant economic loss, upset and distress.

65. Defendant knew or should have known that prohibiting plaintiff from talking about his request for accommodation was illegal.

66. Defendant's actions violated the Vermont Fair Employment Practice Act. 21 V.S.A. § 495 *et sec.*

67. Defendant acted maliciously by recklessly disregarding his rights under Vermont law.

68. As a result of defendant's illegal actions plaintiff has suffered and will continue to suffer lost income.

69. As a result of defendant's illegal actions, plaintiff has suffered and will continue to suffer significant emotional upset.

70. Plaintiff requests exemplary damages for defendant's reckless disregard of his rights.

WHEREFORE, plaintiff seeks the following relief:

(a) fair and reasonable compensation for economic losses;

TEPPER DARDECK & LEVINS, LLP - ATTORNEYS AT LAW    73 CENTER STREET - RUTLAND, VERMONT 05701-4046

(b) fair and reasonable compensation for non-economic losses such as emotional upset and distress;

(c) attorney's fees;

(d) costs, disbursements and interest;

(e) punitive damages; and

(f) such further relief as is deemed fair and just by the court.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated at Rutland, Vermont this 2nd day of October, 2006.

Edward A. Mueller, M.D.

By: _____
James G. Levins, Esquire
Tepper Dardeck & Levins, LLP
73 Center Street
Rutland, Vermont 05701
xxx-42-7544

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| EDWARD A. MUELLER, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | Docket No.: 1:05-CV-38 |
| | ) | |
| - vs. - | ) | |
| | ) | |
| RUTLAND MENTAL HEALTH SERVICES, INC., | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| Defendant. | ) | |

NOW COMES plaintiff, Edward A. Mueller, M.D., by and through his attorney, James G. Levins, III, Esquire, and hereby certifies that on the 2nd day of October, 2006, I served *Plaintiff's Amended Complaint and Jury Demand* dated October 2, 2006 upon Andrew H. Maass, Esquire, attorney for defendant, by first class mail to the following address:

> Andrew H. Maass, Esquire
> Ryan Smith & Carbine
> P.O. Box 310
> Rutland, VT 05702

Dated at Rutland, Vermont this 2nd day of October, 2006.

> *[signature]*
> James G. Levins, III, Esquire
> Tepper Dardeck & Levins, LLP
> 73 Center Street
> Rutland, VT 05701
> Attorneys for Plaintiff